793 F.2d 1291
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NANA CHRISTIAN, Petitioner-Appellant,
v.
DOROTHY ARN, Warden, Ohio Reformatory for Women, Respondent-Appellee.
 85-3279
 United States Court of Appeals, Sixth Circuit.
 5/15/86
 
 AFFIRMED
 N.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: KRUPANSKY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner-appellant Christian appeals the district court's denial of her petition for habeas corpus. Her appeal steams from a conviction for murder in Ohio state court, which sentenced Christian to a term of fifteen years to life imprisonment. The Court of Appeals for the Ninth Judicial District affirmed the trial court decision. Christian sought leave to appeal to the Supreme Court of Ohio. On March 28, 1984, the Supreme Court, sua sponte, denied Christian leave to appeal.
 
 
 2
 Petitioner appeals only two of the issues raised in her habeas corpus petition in federal court. First, she alleges that partiality of the state trial judge denied her a fair trial. Second, she alleges the arresting officer's comment upon her postarrest silence, was a violation of the rule enunciated in Doyle v. Ohio, 426 U.S. 610 (1976). On December 26, 1984, the magistrate to whom the petition was referred issued a report in which he recommended denial of relief. District Judge Sam Bell rendered an order in which he adopted the magistrate's report and recommendation. For the reasons indicated, we affirm the district court's denial of petitioner's writ.
 
 I.
 
 3
 The district court, upon a review of the record, found that the state appellate court had adequately adduced the facts presented at Christian's trial as follows.
 
 
 4
 Christian testified that three days before the stabbing occurred, she learned through her mother and brother that Finney was threatening to kill her. She began carrying a kitchen knife with her, concealed in a brown paper bag. On May 26, 1982, she spent the morning and afternoon socializing at various local bars, arriving at the Silver Slipper Cafe at about 4:00 p.m. She placed her cigarettes and the bag containing the knife on a table near the door of the bar.
 
 
 5
 Christian further testified that she went back to the door to see if any of her friends were outside. When she looked out she saw Finney headed toward her. She said, 'Hi Fag.' This was allegedly a term of endearment. Finney responded by saying, 'I'm not going to be your fag or nothing else.' He then came at her with a knife.
 
 
 6
 Christian testified that she backed into the bar. She felt trapped and knew Finney intended to kill her. She quickly reached for her knife and stabbed Finney before he was able to kill her. Finney stumbled outside the bar and fell to the ground.
 
 
 7
 Defense witness James Hill testified that Finney came into the bar, pulled out a knife, and threatened Christian. Finney then backed away and moved toward the door. At that point, Christian pulled out her knife and stabbed him.
 
 
 8
 The state presented two eyewitnesses who contradicted both of these accounts of the incident. Dorothy Caldwell was in the bar at the time of the incident. She testified that she saw Christian yelling at someone outside. Caldwell got up and saw that it was Finney. Finney started to walk away from Christian. Christian went back to her table, took off her shoes, pulled a knife out of the bag, and went after Finney. She saw Christian stab Finney and then drop what appeared to be a pocketknife next to him.
 
 
 9
 Matthew Jackson testified that he was walking to the bar when he saw Christian and Finney arguing by the doorway of the bar. He then saw Finney back up as Christian came at him with a knife and stabbed him.
 
 
 10
 Detective Lacy testified that he inspected the area of the stabbing. Finney was lying about 80 feet from the door of the bar. Blood stains were found within the immediate vicinity of Finney's body.
 
 II.
 
 11
 Petitioner alleges she failed to receive a fair trial because of the trial judge's lack of impartiality. In United States v. Tilton, 714 F.2d 642, 645 (6th Cir. 1983) (per curiam), this court addressed what standard of review governs allegations of unfair prejudice to a defendant arising from the trial judge's conduct. The court found:
 
 
 12
 Accordingly, the conduct of the trial court must be egregious, and fairly capable of characterization as beyond that necessary to fulfill the role of 'governor of the trial for the purpose of assuring its proper conduct and of determining questions of law,' if reversal is warranted.
 
 
 13
 Id. at 645 (quoting Quercia v. United States, 289 U.S. 466, 469 (1933)).[1]
 
 
 14
 We affirm the district court's finding that the trial judge did not exhibit unconstitutional bias. Petitioner claims the trial court exhibited prejudice against her and in favor of the prosecutor as revealed through discussions between the judge and prosecutor. The quoted portions of the transcript reveal the judge would ask the prosecutor if he was in agreement with a statement or ruling. Petitioner, however, does not respond to the district court's finding that the trial transcript does not reveal actual bias on the part of the trial judge nor any demonstrated prejudicial actions against petitioner. Neither does the petitioner respond to the magistrate's determination that the trial judge's evidentiary rulings were essentially correct. We find no evidence in the record of egregious judicial conduct exhibiting unfair prejudice. There is no basis for relief on this asserted ground.
 
 III.
 
 15
 Petitioner claims her right to post Miranda silence as enunciated in Doyle v. Ohio, 426 U.S. 610 (1976), was violated at trial and that this violation was not harmless error. During the direct examination of Lt. Stemple of the Akron police department the following colloquy took place:
 
 
 16
 Q Were you able to recover the weapon alleged to have been used in this case?
 
 
 17
 A. We were not, no.
 
 
 18
 Q. Can you please tell us why not?
 
 
 19
 MR. WHITNEY: Wait a minute. Objection, your Honor. Can we approach the bench?
 
 
 20
 [Whereupon, the following side bar conference was had out of the hearing of the jury.]
 
 
 21
 MR. WHITNEY: I'm not sure what is coming.
 
 
 22
 MS. POWERS: He can say why. They never got the knife because it was never located.
 
 
 23
 THE COURT: What?
 
 
 24
 MS. POWERS: He can answer why they never found the knife.
 
 
 25
 THE COURT: I would think so.
 
 
 26
 MR. WHITNEY: I would think so, too, if that is what he is going to say. I withdraw the objection if that is what he is going to say.
 
 
 27
 MS. POWERS: He is not going to say that you said anything, or what have you, just why they didn't find the knife.
 
 
 28
 THE COURT: Okay. (Whereupon, end of side bar conference.)
 
 BY MS. POWERS:
 
 29
 Q. Directing your attention to my previous question, will you please state to the jury whether or not you recovered the alleged knife that was used in this case?
 
 
 30
 A. We did not.
 
 
 31
 Q. Can you please tell us why not?
 
 
 32
 A. The search of the area where the incident took place did not uncover the knife. We wanted to talk to Nana to see if she would tell us where the knife was, and on the advice of her attorney, Mr. Whitney, we did not get to talk to her.
 
 
 33
 MS. POWERS: Thank you. I have nothing further.
 
 
 34
 MR. WHITNEY: May we approach the bench again, your Honor?
 
 
 35
 [Whereupon, the following side bar conference was had out of the hearing of the jury.]
 
 
 36
 MR. WHITNEY: I would just state for the record that I believe that his statement, that on the advice of her attorney she did not communicate to us where the knife was, is an unfair andunconstitutional comment upon her exercise of the constitutional privilege to remain silent, and I would move for a mistrial at this point based upon that comment; that it is, in fact, a comment by way of the State's case in chief upon her exercise of a constitutional provision which is prohibited and I would move for a mistrial.
 
 
 37
 MS. POWERS: Your Honor, comments on failure to testify have to come from the Prosecutor's Office. This police officer is telling exactly what happened. My question was, 'Did the Defendant make a statement to you?'
 
 
 38
 'No, she did not.'
 
 
 39
 That is not an unconstitutional comment on failure to testify. I myself as the Prosecutor don't have to refer to the fact that, folks, I want you to know that when she came to the police station she did not testify. That is not a comment on failure to testify. It's merely stating what occurred.
 
 
 40
 THE COURT: Well, should I tell them to disregard that?
 
 
 41
 (Brackets in original.)
 
 
 42
 The magistrate did not reach the question whether Doyle applies to petitioner's claim because he determined that even if Doyle applies the error was harmless. The magistrate reasoned:
 
 
 43
 The only mention of petitioner's silence on advice of counsel was Lt. Stemple's brief remark. Thus, the comment was only a single, isolated instance of testimony during a trial which lasted several days. The petitioner testified herself, and the prosecution did not question her on this matter of silence (Trial TR. 393-412). There was no attempt by the prosecution at the time Lt. Stemple testified to argue or suggest that the jury draw an implication of guilt from petitioner's silence, nor does it appear that the question asked regarding why the police had not found the murder weapon was designed to elicit a response from Lt. Stemple about the petitioner's silence. The petitioner did not deny killing the victim, but claimed it was done in self-defense. Eyewitness testimony (Trial TR. 198-230, 234-64) and other evidence (Trial TR. 124-27) refuted the petitioner's claim of self-defense. Therefore, this magistrate concludes that any possible error was harmless beyond a reasonable doubt in light of all the circumstances. This magistrate recommends that this ground for relief be dismissed.
 
 
 44
 Even if there were a Doyle violation, we agree with the reasoning of the magistrate and district judge that error, if any, was harmless.
 
 
 45
 Accordingly, we AFFIRM the decision of the district court.
 
 
 
 [1]
 In Tilton the court addressed specifically whether the trial court's numerous interruptions were sufficiently egregious to require reversal. The court declined to reverse the trial court despite the court's belief the trial judge went beyond the desirable neutral role of a judge. 714 F.2d at 644